IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

TERRY LEE LATTIMORE                                    PETITIONER

v.                                              No. 4:11CV71-GHD-SAA

SUPERINTENDENT RON KING, ET AL.                        RESPONDENTS

CONSOLIDATED WITH

TERRY LEE LATTIMORE,                                   PETITIONER

v.                                               No. 4:11CV71-D-A

RON KING, ET AL.                                       RESPONDENTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Terry Lee Lattimore for a writ of

*habeas* corpus under 28 U.S.C. § 2254. The State has responded to the petition; Lattimore has

submitted a traverse, and the State has responded to the traverse. The matter is ripe for resolution. For

the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### Facts and Procedural Posture

Terry Lee Lattimore is in the custody of the Mississippi Department of Corrections and is

currently housed at the South Mississippi Correctional Institution in Leakesville, Mississippi. He was

convicted of capital murder in the Circuit Court of Washington County, Mississippi, State Court

Record, "S.C.R.", 2002-KA-01853,[1] Vol. 1, pg. 104. Lattimore was then sentenced to a term of life in

---

[1] In Lattimore's case, there were two state court records. The first of these, Cause No. 2002-KA-01853, documents Lattimore's direct appeal of his conviction and sentence. The second, Cause NO. 2008-CP-01760-COA, documents Lattimore's appeal of the trial court's denial of his motion for post-conviction collateral relief. As such, the court will designate which state court record is being referenced by citing to the appropriate cause number.

the custody of the Mississippi Department of Corrections. S.C.R., 2002-KA-01853, Vol. 1, pg. 105.

Lattimore appealed his conviction and sentence to the Mississippi Supreme Court, raising the following grounds for relief, (as stated by Lattimore through counsel):

I. The trial court erred in overruling Lattimore's motion to suppress all evidence concerning Mrs. Virgie Dycus' pre-trial identification of the Appellant, Terry Lee Lattimore, and to prohibit any in-court identification of Lattimore by Mrs. Dycus.

II. The trial court erred in overruling Lattimore's objection to the in-court identification of the Appellant by Mrs. Virgie Dycus, as Dycus failed to clearly identify Lattimore as the perpetrator of the crime. The trial court was under a continuing obligation to protect the right of Lattimore to a fair trial and to ensure that an unreliable and improper identification of the Defendant did not occur.

III. Lattimore was denied effective assistance of counsel in violation of the Sixth Amendment of the Constitution of the United States and the Constitution of the State of Mississippi.

IV. The trial court erred in overruling Lattimore's objection to the introduction, by the State, of a metal object as the purported murder weapon.

V. The State made certain comments during closing argument that were improper, inflammatory and outside the record and should be reviewed for plain error. Additionally, this Court should review as plain error Mrs. Dycus' in-court identification of Lattimore as it was suggested and assisted by members of her family in the audience.

VI. Evidence was presented to the trial court that during the course of Lattimore's trial one of the jurors was communicating with someone outside the jury, in direct violation of the trial court's order and the rules of sequestration, accordingly this error should be reviewed by this Court for plain error.

VII. The trial court erred in refusing to grant Lattimore's motion for mistrial following an egregious remark and misrepresentation made by the State during its closing argument.

VIII. The trial court erred in denying Lattimore's motion for a new trial as the verdict of the jury was against the overwhelming weight of the evidence.

IX.     Lattimore's conviction and sentence require reversal as the cumulative effect of the errors committed by the State and trial court deprived Lattimore of his constitutional right to a fair trial.

The Mississippi Supreme Court considered Lattimore's claims and affirmed his conviction and sentence. *Lattimore v. State*, 958 So.2d 192 (Miss. 2007), *reh'g. denied* June 28, 2007 (Cause No. 2002-KA-01853-SCT)

In the Mississippi Supreme Court, Lattimore filed an application for permission to proceed in the trial court with a motion for post-conviction collateral relief. S.C.R., 2008-CP-01760-COA, Vol. 1, pg. 1.  On October 23, 2007, the Mississippi Supreme Court granted Lattimore permission to proceed in the trial court. S.C.R., 2008-CP-01760-COA, Vol. 1, pg. 133.  In his motion for post-conviction collateral relief, Lattimore raised the following grounds for relief (as summarized by the court):

I.      Lattimore received ineffective assistance of counsel on direct appeal:

 A. Counsel failed "to require the appellee's case to survive the crucible of meaningful adversarial testing." (S.C.R., 2008-CP-01760-COA, Vol. 1, pg. 9).

 B. Counsel failed to properly explain the law governing the pre-trial and in-court identification and should have cited to *Gilbert v. California*, 388 U.S. 218 (1967).

 C. Counsel failed to address trial counsel's failure to address the pre-trial identification issue in terms of deprivation of counsel.

 D. Counsel failed to challenge trial counsel's failure to investigate jurors, particularly Arthur L. Dickson.

 E. Counsel failed to challenge trial counsel's failure to litigate Lattimore's Fourth Amendment claim.

 F. Counsel failed to argue that the trial court had abused its discretion in allowing the pipe to be admitted into evidence.

II.       Lattimore received ineffective assistance of counsel during pre-trial proceedings and at trial:

          A.       Counsel failed to investigate jurors, particularly Arthur L. Dickson

          B.       Counsel failed to argue that the trial court had abused its discretion in allowing the pipe to be admitted into evidence.

III.      Lattimore was denied his right to counsel.

IV.      Lattimore was denied his right to be tried by an impartial jury.

V.       Lattimore was denied his right to be free from illegal searches and seizures.

On September 29, 2008, the trial court denied Lattimore's motion. S.C.R., 2008-CP-01760-COA, Vol. 1, pp. 160-164. The Mississippi Court of Appeals then affirmed the trial court's denial of Lattimore's motion for post-conviction collateral relief. *Lattimore* v. State, 37 So.3d 678 (Miss. App. 2010), *reh'g denied* June 22, 2010 (Cause No. 2008-CP-01760-COA). Lattimore did not seek a writ of certiorari to the Mississippi Supreme Court for further review of the Court of Appeals' opinion.

Lattimore filed the instant federal petition for a writ of *habeas corpus* under 28 U.S.C. '2254, raising the following grounds for relief (as summarized by the court)[2]:

**Ground One:** The trial court erred in denying Lattimore's motion to suppress the pre-trial identification.

**Ground Two:** The trial court erred in allowing an in-court identification of Lattimore.

**Ground Three:** Ineffective assistance of trial counsel for:

          A.       Representing both Lattimore and accomplice at the time of the pre-trial line up;

          B.       Failing to adequately investigate Lattimore's case and interview key witnesses;

---

[2] As many of Lattimore's claims raise similar arguments, the court has summarized the claims within each of Lattimore's grounds for relief. In the interest of brevity and clarity, the court has grouped similar claims together.

    **C.**    Failing to move for a new trial upon learning of potential juror misconduct;

    **D.**    Failure to move for a mistrial following the in-court identification and after the State's closing argument.

**Ground Four:** The trial court erred in overruling Lattimore's objection to the introduction of a metal pipe purported to be the murder weapon.

**Ground Five:** Lattimore was denied due process due to possible juror misconduct.

**Ground Six:** The State committed prosecutorial misconduct during closing arguments.

**Ground Seven:** The trial court erred in failing to grant Lattimore's motion for a mistrial.

**Ground Eight:** The verdict was against the overwhelming weight of the evidence.

**Ground Nine:** Ineffective assistance of appellate counsel:

    **A.**    The cumulative effect of counsel's errors deprived Petitioner of a fair trial and effective direct appeal.

**Ground Ten:** Ineffective assistance of counsel:

    A.    Trial and appellate counsel failed to develop evidence that Lattimore was denied a fair trial and was innocent.

    B.    Trial counsel failed to appear at the pre-trial lineup.

    C.    Trial counsel failed to object to the in-court identification.

    D.    Trial counsel failed to move for a mistrial due to the in-court identification.

**Ground Eleven:** Ineffective assistance of counsel during pre-trial, trial and post-trial proceedings.

**Ground Twelve:** Lattimore was denied his right to counsel during the pre-trial line-up.

**Ground Thirteen:** Lattimore was denied his right to be tried by an impartial jury.

**Ground Fourteen:** Lattimore was denied his right to an impartial jury.

**Ground Fifteen:** Lattimore was denied his right to be protected from illegal search and seizure.

### The Doctrines of Procedural Default and Procedural Bar

If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised in a federal *habeas corpus* proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Similarly, "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal *habeas* is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F. 3d 631, 634 (5th Cir. 2001) (*citing Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991); *Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995)). This doctrine is known as *procedural bar*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, the petitioner can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from properly raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the

bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

### Grounds Nine, Ten (A), and Ten (B): Procedural Default

Lattimore's allegations contained in Grounds Nine, Ten (A) and Ten (B) were not raised in state court – and no longer can be. In Ground Nine, Lattimore claims that the cumulative effect of counsels' errors deprived him of constitutionally adequate representation. On direct appeal, Lattimore raised an allegation of cumulative error in the context of the trial *court's* actions, but never raised an allegation of cumulative error in terms of trial *counsel's* actions. In Ground Ten (A), Lattimore argues that both trial and appellate counsel failed to adequately develop the evidence in order to demonstrate that he was innocent and had been denied a fair trial. However, a review of both Lattimore's appellate brief and motion for post-conviction collateral relief reveals that Lattimore has not presented these issues to the state courts. Likewise, Lattimore never presented his allegation in Ground Ten (B) (that trial counsel failed to appear during the pre-trial lineup) to the state courts. Though Lattimore raised the claim in his state post-conviction application that *appellate* counsel should have challenged trial counsel's absence during the lineup, he never raised a separate claim challenging *trial* counsel's actions. As such, this court is procedurally barred from reviewing these claims on the merits under *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995), and they must be dismissed with prejudice.

- 7 -

*O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

When an "unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from *habeas* review." *Sones, supra*, quoting *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993). By failing to raise the claims in Grounds Nine, Ten (A) and Ten (B) on either direct appeal or during post-conviction proceedings, Lattimore has failed to proceed in a procedurally proper manner. "If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal *habeas corpus* relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). As Lattimore did not present the facts of these grounds during appeal or through a state application for post-conviction relief, he waived his opportunity to have the Mississippi appellate courts review the claims on the merits. Lattimore has, therefore, defaulted the allegations contained in Grounds Nine, Ten (A), Ten (B), and this court cannot review the claims on the merits.

In addition, Lattimore has not shown "cause" under the "cause and prejudice" test necessary to allow this court to reach the merits of the claims despite the procedural bar because no external impediment existed to prevent him from raising and discussing the claims properly as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). Though attorney error may constitute cause to overstep procedural default, in order for such error to excuse the default in this case, in Lattimore's application for state post-conviction relief, he should have raised independent claims of ineffective assistance of appellate counsel (for failing to argue that trial counsel's performance was deficient). *See Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S. Ct. 1587, 1591-92

- 8 -

(2000); *see also Murray v. Carrier,* 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397

(1986). Lattimore could only have challenged the actions of appellate counsel during state post-

conviction collateral review, which he filed *pro se.* For these reasons, Lattimore cannot overcome the

barrier of procedural default in Grounds Nine, Ten (A), and Ten (B). As Lattimore has not shown

cause for his default, the court need not consider whether he suffered prejudice from its application.

*Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Neither will this court's decision to apply the default result in a "fundamental miscarriage of

justice" because Lattimore has not shown that "as a factual matter, that he did not commit the crime of

conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d

106, 108 (5th Cir. 1995)). He has not presented new, reliable evidence that was not presented at trial

showing that it was "more likely than not that no reasonable juror would have convicted him in light

of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). As such, he has not shown that a

fundamental miscarriage of justice would result if his claims are not considered on the merits. Thus,

Grounds Nine, Ten (A), and Ten (B) of the instant petition for a writ of *habeas corpus* will be denied.

### Ground Fifteen: Procedural Bar

In Ground Fifteen, Lattimore argues that he was denied the right to be protected from illegal

search and seizure. Lattimore raised this claim for the first time in his state motion for post-conviction

collateral relief. The majority of Lattimore's argument regarding the illegal search and seizure claim

in his state post-conviction motion involved the claim that appellate counsel was ineffective in

deciding not address trial counsel's failure to litigate the claim at trial. A liberal reading of Lattimore's

claim, as required by *Haines v. Kerner*, 404 U.S. 519 (1972), reveals that in his post-conviction

motion Lattimore raised an independent claim challenging the search of his vehicle. The Mississippi

Supreme Court considered this issue on appellate review of the trial court's denial of Lattimore's motion for post-conviction collateral relief. The court found that, to the extent the claim was an independent claim of illegal search and seizure, it was procedurally barred under Miss. Code Ann. § 99-39-21(1). Section 99-39-21(1) of the Mississippi Code reads:

> Failure by a prisoner to raise objection, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

"When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F. 3d 631, 634 (5th Cir. 2001) (*citing Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991); *Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995)). Section 99-39-21(1) of the Mississippi Code is an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). The adequacy of the state procedural bar depends on "whether Mississippi has strictly or regularly applied it." *Id.* (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id.* Lattimore has not done so in this case, and his federal *habeas corpus* claims are thus procedural barred. *Id.* at 861. In addition, Lattimore has neither shown cause for the state court default that gave rise to the federal bar; nor has he shown that prejudice would result if the court applied it. Finally, Lattimore has not presented new, reliable evidence – not presented at trial – making it more likely than not that no reasonable juror

- 10 -

could have found him guilty beyond reasonable doubt. For these reasons, Lattimore cannot overcome the procedural bar, and his claims in Ground Fifteen of the instant petition must be dismissed as procedurally barred.

### Ground Four: State Evidentiary Ruling

In Ground Four, Lattimore argues that the trial court erred in overruling his objection to the admission of a metal bar purported to be the murder weapon. A federal court may not review a claim challenging a state court's ruling on the admissibility of evidence under state law – because a state court's ruling on evidentiary matters is solely an issue of state law. "A state court's evidentiary rulings present cognizable *habeas* claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir.1994). "[I]n reviewing state court evidentiary rulings, the federal *habeas* court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999).

During trial, counsel for the State and for Lattimore conferred with the trial court regarding a metal bar which had been found under a van near the victim's body. S.C.R., 2002-KA-01853, Vol. 5, pg. 382. The trial judge initially held that, if the State wished to introduce the bar, then it must first provide evidentiary support. S.C.R., 2002-KA-01853, Vol. 5, pg. 383. Captain Doyle Barrett of the Washington County Sheriff's Department testified that a suspected weapon (the metal bar) had been recovered from under a van on the victim's property. S.C.R., 2002-KA-01853, Vol. 8, pg. 759. However, on cross-examination, Captain Barrett acknowledged that they had been unable to verify

- 11 -

through any scientific means that the bar had, in fact, been the murder weapon. S.C.R., 2002-KA-01853, Vol. 8, pg. 771. Dr. Steven Hayne, the forensic pathologist who conducted the autopsy in this case, testified that the murder weapon was "a blunt object, an object that had weight, an object that was delivered with great force and that could deliver great force to the head." S.C.R., 2002-KA-01853, Vol. 8, pp. 811-812. Later, Investigator Kelvin McKenzie, testified that he was present when the bar was recovered and taken into evidence, and he identified the bar, verifying that it was still in the same package. S.C.R., 2002-KA-01853, Vol. 8, pp. 827-828. Later, Captain David Sessums of the Washington County Sheriff's Department testified that the weapon was not a pipe (as previous witnesses had described it), but a bar of solid iron, which he called "shaft stock." S.C.R., 2002-KA-01853, Vol. 8, pp. 862. Defense counsel then objected to admission of the bar into evidence. S.C.R., 2002-KA-01853, Vol. 8, pg. 829. However, the trial court overruled the objection, and the bar was admitted as Exhibit S-22. S.C.R., 2002-KA-01853, Vol. 8, pg. 829.

On direct appeal, the Mississippi Supreme Court considered Lattimore's challenge to the admission of the bar and held that there was "ample evidence linking the weapon to the crime." *Lattimore*, 958 So 2d at 203. The Mississippi Supreme Court found:

> The prosecution introduced Lattimore's own statement, which the defense did not seek to suppress. [S.C.R., 2002-KA-01853, Vol. 8, pg. 732]. After admitting to being at the scene, Lattimore claimed that he saw Brown dispose of the pipe used in the murder under a nearby van. [S.C.R., 2002-KA-01853, Vol. 8, pg. 733]. The autopsy revealed that Dycus's death was caused by blunt-force trauma to the head. Although there were no DNA samples, blood, or fingerprints, the experts concluded that the wound could have been caused by the pipe. Thus, ample proof existed for a jury to conclude that the metal pipe introduced by the state was the murder weapon. The defense presented no evidence to the contrary, thus this issue is also without merit.

*Id.* The trial court's decision to admit the iron bar into evidence was supported by ample evidence that had previously been admitted. Each juror had the opportunity to examine the evidence as a whole and

- 12 -

give each piece whatever weight he deemed appropriate. For these reasons, Lattimore has not shown that the trial court's decision rendered the trial fundamentally unfair. The allegation in Ground Four is simply issue of state law and does not rise to the level of a valid *habeas corpus* claim. Ground Four of the instant petition for a writ of *habeas corpus* will therefore be dismissed for failure to state a claim upon which relief could be granted.

### Grounds One, Two, Three, Five, Six, Seven, Eight, Ten (C), Ten (D), Eleven, Twelve, Thirteen, and Fourteen: Denied on the Merits in State Court

The Mississippi Supreme Court has already considered Grounds One, Two, Three, Five, Six, Seven, Eight, Ten (C), Ten (D), Eleven, Twelve, Thirteen, and Fourteen on the merits and decided those issues against Lattimore; as such, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's

claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to these grounds of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues

already decided on the merits.

### Grounds One, Two and Twelve: Pretrial and In-Court Lineups

In Grounds One and Twelve, Lattimore argues that the trial court erred in denying his motion to suppress evidence of the pretrial identification – and that he was denied his constitutional right to counsel during the lineup. In Ground Two, Lattimore challenges the in-court identification. As these issues are so closely related, the court will address them together.

"[A] post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution" requiring the presence of defense counsel. *Gilbert v. California*, 388 U.S. 263, 272 (1967), citing *U.S. v. Wade*, 388 U.S. 218 (1967). "[P]olice conduct of such a lineup without notice to and in the absence of [defense] counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." *Id.* However, an in-court identification will not be error if it was "of independent origin" from a tainted pre-trial lineup. *Id.* A court must consider several factors to determine whether a subsequent in-court identification is independent of a flawed pre-trial identification process. *Neil v. Biggers*, 409 U.S. 188 (1972). The "primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'" *Id.* at 198. The court must consider:

[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Id.* at 199-200.

During the hearing on Lattimore's motion to suppress evidence of the pre-trial identification, Doyle Barrett with the Washington County Sheriff's Department testified that the lineup was held in

- 15 -

an attempt to identify who had actually swung the metal bar which killed the victim. S.C.R., 2002-KA-018536, Vol. 3, pg. 48. Both suspects admitted being present during the murder, but each claimed the other had killed Mr. Dycus. S.C.R., 2002-KA-018536, Vol. 3, pg. 48. Barrett testified:

> I don't think we had any problem with identity. They both admitted being at the scene. The car that was abandoned was registered to Mr. Lattimore. I think the clothes were found – well, I know they were found nearby with blood on them, and later it was determined to be Mr. Dycus' blood. But my purpose of the photo lineup was to –
>
> Q:    Was it a physical lineup?
>
> A:    of the physical lineup was to determine exactly who was swinging the pipe.

S.C.R., 2002-KA-018536, Vol. 3, pg. 48. Barrett testified that five other inmates were part of the lineup with Lattimore and Brown, his accomplice. S.C.R., 2002-KA-018536, Vol. 3, pg. 48. Further, the deputies took steps to ensure that the members of the lineup were wearing similar clothing and looked somewhat alike. S.C.R., 2002-KA-018536, Vol. 3, pg. 50. In addition, Barrett testified that Mrs. Dycus identified Lattimore as the man who had beaten her husband, and a photograph of the members of the lineup was admitted as an exhibit during the hearing. S.C.R., 2002-KA-018536, Vol. 3, pg. 49.

Barrett testified that, prior to the lineup, the Public Defender's office was contacted, saying:

> Yes, I called the Public Defender's Office and talked with Mrs. Barbara Ballard. And I think she told me that Mr. Bill Labarre is out or unavailable or something and that she would come over, and she did. She came over, and she was there during – when the lineup was shown. Of course, I didn't have any reason to know that she wasn't supposed to be there. Whether she was or not. I mean, she was a member of the Public Defender's Office, and she was there and witnessed it.

S.C.R., 2002-KA-018536, Vol. 3, pp. 50-51. Barrett noted that Mrs. Ballard did not ask that the lineup be postponed until Mr. Labarre was available. S.C.R., 2002-KA-018536, Vol. 3, pg. 51. Barrett further stated that he did not know whether or not Mrs. Ballard was an attorney and he "had no idea

- 16 -

that anything at all was being done wrong when a member of your office or Mr. Labarre's office came over and was present during the lineup." S.C.R., 2002-KA-018536, Vol. 3, pp. 51-52.

Lattimore's case is distinguishable from *Gilbert,* in which a lineup was conducted in an auditorium sixteen days after the defendant had been indicted and counsel appointed – and defense counsel was not notified of the lineup. *Gilbert,* 388 U.S. 269. The Court held that, with regard to witnesses who were allowed to testify at trial regarding the pre-trial lineup, a *per se* exclusionary rule was required because only such a rule "can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to counsel at the critical lineup." *Id.* at 273. The Court also reasoned, however, that such error could be deemed harmless in some cases. *Id* at 274.

In the present case, law enforcement officers did, indeed, notify the Public Defender's office of the impending lineup. In addition, law enforcement waited until a representative of that office was present before proceeding. Officer Barrett was unaware that anything was amiss during the lineup, and the representative from the Public Defender's Office did not request that the lineup be postponed – and did not indicate whether she was an attorney. As such, the purpose of the exclusionary rule – to deter willful misconduct by law enforcement officials – does not apply to Lattimore's case. Excluding evidence of the pre-trial lineup in this case would certainly not serve to deter future misconduct by law enforcement, as it appears that there was no misconduct, only misunderstanding between law enforcement officials and defense counsel's office. In any event, the Mississippi Supreme Court held that any error in the pretrial lineup was harmless.[3]

On direct appeal, the Mississippi Supreme Court held that, because Mrs. Dycus' in-trial

---

[3] The Mississippi Supreme Court held that "[t]he law enforcement officers should not have conducted the identification proceeding knowing that Lattimore's counsel could not be present." *Lattimore,* 958 So.2d at 198. Testimony in the record, however, shows that law enforcement officers believed that Lattimore was represented by the woman from the Public Defender's Office.

identification of Lattimore had an origin independent of the pretrial lineup, any error in the pre-trial lineup was rendered harmless. *Lattimore*, 958 at 198. During direct examination, Mrs. Dycus identified Lattimore as the man who beat her husband in the following exchange:

A:    I believe it's the one that's in the blue shirt back there. He's not sitting here. Wait – wait a minute. That's him right there I do believe. No. As I say, I've been having trouble.

Q:    Take your time.

A:    I still say I believe that's him best as I can recall.

Q:    And you're pointing at whom?

A:    That one.

Q:    Describe what he has on?

A:    Pardon?

Q:    Describe what he has on?

A:    A white shirt and a tie.

Q:    And where is he seated?

A:    Pardon?

Q:    Where – where is he in the courtroom?

A:    Right there at the end of the table.

Q:    Are you sure?

A:    I think I'm sure.

Q:    Are you sure?

A:    He looks more like him than anybody else in here that I can see. Let's put it that way.

S.C.R., 2002-KA-01853, Vol. 7, pp. 647-648. At that point a bench conference was held and the trial

court made a record that "the person that she made the last statement regarding was the defendant."

S.C.R., 2002-KA-01853, Vol. 7, pg. 649. Later, because the audiotapes of the trial could not be found

after the direct appeal was filed, the trial court held evidentiary hearings to clarify the record regarding

the in-court identification. Following those hearings, the trial court held:

> It took Mrs. Virgie Dycus approximately two (2) minutes to make an in-court
> identification of the defendant. When asked by the Assistant District Attorney, Tucker
> Gore, whether the man that she had identified in earlier testimony as the person she
> saw beating her husband was in the courtroom, Mrs. Dycus slowly scanned the entire
> courtroom from left to right, beginning with jurors in the jury box (to her immediate
> right). She initially pointed over the Defendant's head at a person in the audience
> wearing a blue shirt. After a pause, she changed her response by pointing at the
> Defendant who was wearing a white shirt and tie. Two (2) minutes elapsed from the
> time of the initial question through the designation of the Defendant in her response.

S.C.R., 2002-KA-01853, Supplemental Vol. 1, pg. 2. Based on the record before it, the state court

applied the *Biggers* factors to the in-court identification. *Id.*

### Opportunity to view the accused

With regard to the first factor, Mrs. Dycus' opportunity to view Lattimore, the state court

found:

> Virgie Dycus testified that at the time of the attack on her husband, she had a clear
> view of the assailants through her kitchen window. [S.C.R., 2002-KA-01853, Vol. 7,
> pp. 645-646]. Although she admitted that she was not wearing her bifocals at the time,
> she testified that her glasses did not affect her vision at a distance. [S.C.R., 2002-KA-
> 01853, Vol. 7, pp. 655-656]. She further testified that she was able to see Lattimore
> clearly at the time of the murder, because he looked straight through the window at
> her, and when he saw her on the telephone, he and the other man ran away. [S.C.R.,
> 2002-KA-01853, Vol. 7, pg. 650].

*Lattimore*, 958 So.2d at 199.

### Degree of attention

The state court also found that Mrs. Dycus admitted she was under stress at the time she

witnessed her husband's attack and that she may have paid "more attention to her husband than his

- 19 -

assailants." *Id.* However, the state court found that while Mrs. Dycus was speaking to the 911

operator, "she was standing at the window, watching the two men as her husband was being beaten."

*Id.* In addition, the court recognized that Mrs. Dycus had described the man who hit her husband as

slender man with a light complexion who was shirtless, a description fitting Lattimore, but not Brown.

*Id.*

### Accuracy of prior description.

The state court held:

> Virgie Dycus was consistent from the time she first described Lattimore on the day of
> the murder until the day of trial that Lattimore was a slender, light-skinned black man
> with short hair. [S.C.R., 2002-KA-01853, Vol. 7, pg. 659]. She could not say
> definitely that his hair was braided on the day of the murder, but it was hanging long
> on the day of the lineup. [S.C.R., 2002-KA-01853, Vol. 7, pg. 652].

*Lattimore*, 958 So.2d at 199. The record fully supports this finding.

### The level of certainty

The state court recognized that Mrs. Dycus had successfully identified Lattimore at the pre-

trial lineup as well as in court. *Id.* at 200. Further, the court noted that Lattimore never denied being

present during the murder. *Id.* The record show that, throughout the case, Mrs. Dycus was confident

Lattimore was the attacker.

In light of these findings, the Mississippi Supreme Court held that "substantial credible

evidence supports the judgment of the trial court with regard to both the pre-trial and in-court

identifications of Lattimore" and found his challenges to be without merit. *Lattimore*, 958 So.2d at

200. There was no error in the pre-trial lineup. Further, even if the sequence of events had risen to the

level of error, it was harmless. Federal courts may grant relief based upon allegations of trial error

only when the error "had substantial and injurious effect or influence in determining the jury's

- 20 -

verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714 (1993). First, Mrs. Dycus'

in court identification rested on her memory of the murder itself, rather than the pre-trial lineup. As

such, any error in the pretrial line up was harmless. In any event, given the evidence against

Lattimore, Mrs. Dycus' identification of him as the primary attacker was not the sole basis upon which

the jury could have reached its verdict. Lattimore did not deny that he was present during the murder;

as such, there was no danger of misidentification in this case. Under Mississippi law, an accomplice

has the same criminal culpability as the principal. Miss. Code Ann. § 97-1-3. The evidence presented

at trial easily supports a finding that Lattimore was a full participant in the crime, and, as such, it

matters not whether he was the individual who swung the lethal blow.

　　Based upon Mrs. Dycus' eyewitness testimony, Lattimore and Brown drove to the Dycus

home early on the morning in question. One of them spoke with Dycus, distracting him, while the

other – whom Mrs. Dycus identified as Lattimore – crushed his skull from behind with repeated blows

from an object the size of a large stick or baseball bat. One of the assailants then knelt down, turned

out Dycus' pockets, and took his wallet. One also tried to bind Mr. Dycus' hands with some type of

string. Lattimore admitted during his interview with the police that the string was a pair of bootlaces.

When Lattimore saw Virgie Dycus staring at he and Brown through the window while talking on the

telephone, they both ran to Lattimore's white car and fled the scene together. A neighbor saw

Lattimore's white car drive to and from the Dycus home, and, minutes later, a woman standing at her

car in preparation for driving to church saw Lattimore's car approach at a high rate of speed, come to a

screeching, spinning halt, then back down an embankment into some woods off the main road. After

she reported the suspicious vehicle to the police, they quickly found it and discovered various pieces

of evidence – including clothes Lattimore later stated he was wearing and the bootlaces one of the

assailants used in an attempt to bind Mr. Dycus' hands. The vehicle was registered to Lattimore. Several pieces of this evidence eventually tied Lattimore to the crime, including pants with Mr. Dycus' blood on it. Within a few hours of Mrs. Dycus' 911 call, the police located Brown (Lattimore's accomplice) less than two miles from the abandoned white vehicle. After speaking with Brown, law enforcement officers initiated a search and apprehended Lattimore several days later. Investigators found Mr. Dycus' blood on Lattimore's pants. Lattimore admitted in his statement that he was present during the murder, though he implicated his codefendant Brown as the principal in both the robbery and the murder. Lattimore also described in his statement many items that could be found in or near his vehicle, and law enforcement officers found them there, as described, including three rims taken from the vehicle's wheels.

Taken as a whole, the evidence presented at trial was more than sufficient for the jury to find that Lattimore had participated fully in the attack and was criminally liable for robbing and killing Mr. Dycus. Whether or not Lattimore was the primary attacker, the evidence easily establishes that Lattimore was, at a minimum, an accomplice, and the court properly instructed the jury regarding accomplice liability. S.C.R., 2002-KA-01853, Vol. 9, pg. 999.

Having analyzed the *Biggers* factors, the court concludes that the trial court did not err in allowing the in-court identification. Thus, the Mississippi Supreme Court's holding that Lattimore's challenges to the pre-trial and in-court identifications were without merit was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Lattimore is not entitled to *habeas corpus* relief as to his claims in Grounds One, Two and Twelve.

## Grounds Five, Thirteen and Fourteen: Juror Misconduct

Lattimore next alleges that he was denied due process due to juror misconduct. After sentencing, the trial court was informed that a member of the court's maintenance staff, Laverne Askew, claimed to have information regarding one of the jurors, Ms. Batteast. S.C.R., 2002-KA-01853, Vol. 12, pg. 1230, 1232. Ms. Askew said that she had overheard Malcolm Morris, the boyfriend of juror Batteast, state that he had conversations with her while she was sequestered. S.C.R., 2002-KA-01853, Vol. 12, pg. 1230, 1241. As such, the trial judge held a hearing to consider the issue. First, the court reporter, Geanell Adams, was called to testify. Ms. Adams testified that she had been approached by members of the maintenance staff who mentioned that a man waiting in the hallway had told them "he was [there] to pick up his girlfriend who was scheduled to be leaving." S.C.R., 2002-KA-01853, Vol. 12, pp . 1231-1232. Ms. Adams further stated that she had been told by Laverne Askew, one of the maintenance workers, that the juror had a phone. S.C.R., 2002-KA-01853, Vol. 12, pg. 1232. However, Ms. Adams admitted that she did not personally speak with the man in the hallway. S.C.R., 2002-KA-01853, Vol. 12, pg. 1232.

Next, Laverne Askew testified. Ms. Askew stated that she told Ms. Adams she had heard "a boy in the hall" "talking to someone, and he said his wife had a phone and saying that they was going to go on and get through with it." S.C.R., 2002-KA-01853, Vol. 12, pg. 1235. Ms. Askew acknowledged that she did not hear the man speak about any specifics of the case. S.C.R., 2002-KA-01853, Vol. 12, pg. 1235. Ms. Askew then clarified that, she had been walking by the man in the hall when he said, "I been talking to my wife on the phone. She's on the jury. And it ain't going to be long." S.C.R., 2002-KA-01853, Vol. 12, pg. 1238.

The trial judge next heard from James Woodard, another member of the maintenance crew,

- 23 -

who was present during Ms. Askew and Ms. Adams' conversation. Mr. Woodard simply recounted Ms. Askew's statement that she had heard a man state that he had spoken to his wife who was a juror. S.C.R., 2002-KA-01853, Vol. 12, pg. 1239. Mr. Woodard also noted that the court reporter, Ms. Adams, had mentioned that some jurors were having difficulty reaching a verdict. S.C.R., 2002-KA-01853, Vol. 12, pp. 1240-1241. Further, Mr. Woodard was able to inform the trial court that the man in question, the juror's boyfriend, was Malcolm Morris. S.C.R., 2002-KA-01853, Vol. 12, pg. 1241.

At that point, an attorney was brought in to discuss the matter with the juror, Ms. Batteast. S.C.R., 2002-KA-01853, Vol. 12, pg. 1244. After meeting with the attorney, Ms. Batteast testified and denied having access to a cell phone or even owning one. S.C.R., 2002-KA-01853, Vol. 12, pp. 1247, 1249. Ms. Batteast stated that the only contact she had with her boyfriend, Malcolm Morris, was when he dropped clothes off at the hotel and that she had no discussions with him regarding the deliberations. S.C.R., 2002-KA-01853, Vol. 12, pg. 1248.

Mr. Morris was also provided an attorney and testified about the matter. S.C.R., 2002-KA-01853, Vol. 12, pg. 1250. Morris stated that the only contact he had with Ms. Batteast was the court-condoned action of dropping clothes off at the hotel. S.C.R., 2002-KA-01853, Vol. 12, pg. 1251. Morris believed he had spoken with Ms. Batteast on the bailiff's phone about her need for the clothes, although Ms. Batteast remembered having that conversation with her mother. S.C.R., 2002-KA-01853, Vol. 12, pp. 1248, 1251. Morris testified further that he had not discussed the case with Ms. Batteast. S.C.R., 2002-KA-01853, Vol. 12, pg. 1252. He said that he had been in the hallway of the courthouse with others, was asked why he was sitting in the hall, answered that his "wife" was on jury duty and he was waiting for her. S.C.R., 2002-KA-01853, Vol. 12, pg. 1252-1253. Morris testified that he had come to the courthouse because he had seen in the paper that the jury should be getting the

case that day, and he was hoping it would be over. S.C.R., 2002-KA-01853, Vol. 12, pg. 1254. He

said that "the maintenance worker" had called him to tell him that he was in trouble with the court.

S.C.R., 2002-KA-01853, Vol. 12, pg. 1254. Mr. Morris then testified that the statement which had

been overheard was actually Morris' discussion of a movie, saying:

> Judge, we had a conversation yesterday. Anybody rent it. It's at Blockbuster. "Jury
> Duty" is the name of the movie. It's a man on jury duty, his wife's up for murder, and
> he's got a cell phone contacting, he's hanging the jury up on purpose. He's contacting
> everybody. Go rent it. It's on sale right now. He's contacting everybody getting –
> calling out whose in the jury, and they killing them one by one. That's all the
> conversation we had about a phone being brought up yesterday.

S.C.R., 2002-KA-01853, Vol. 12, pg. 1257.

In addition, the trial judge heard from Shirley Roberts, Terry Lattimore's sister, who stated she

had also been in the hallway during the conversation. S.C.R., 2002-KA-01853, Vol. 10, pg. 1123 and

Vol. 12, pg. 1258. According to Ms. Roberts, Morris said that he had spoken to Ms. Batteast every

night on her cell phone. S.C.R., 2002-KA-01853, Vol. 12, pg. 1259. Ms. Roberts also claimed that

Mr. Morris told her that, according to Ms. Batteast, she and another juror disagreed with the verdict.

S.C.R., 2002-KA-01853, Vol. 12, pg. 1259. Ms. Roberts said that no one else was present when she

spoke with Mr. Morris. S.C.R., 2002-KA-01853, Vol. 12, pg. 1260.

Malcolm Morris was then re-examined by the trial judge. He admitted that he had a

conversation with Ms. Roberts and her sister the day before. S.C.R., 2002-KA-01853, Vol. 12, pg.

1263. He also said that he had several conversations that day with the people in the hallway, both the

family of the victim and the Lattimore's family. S.C.R., 2002-KA-01853, Vol. 12, pg. 1263.

However, Morris denied ever having a one-on-one conversation with Ms. Roberts. S.C.R., 2002-KA-

01853, Vol. 12, pg. 1264. Finally, the Sheriff informed the court, "We checked everything. The room

and her personal belongings in a bag. She had no cell phone." S.C.R., 2002-KA-01853, Vol. 12, pg.

1266.

The evidence produced at the hearing provides very little support for a claim of improper communication between Ms. Batteast and Malcolm Morris. Askew was the only courthouse employee who claimed to have had a direct conversation with Morris, and she stated only that she had heard him say his wife had a phone and told him the trial would be over soon. The testimony from the other court employees was simply a recitation of what Ms. Askew had told them. The only other testimony of improper conduct came from Shirley Roberts, Lattimore's sister, who had an interest in the outcome of the trial. Morris and Batteast adamantly denied any unauthorized contact – and were facing the possibility of contempt charges. Nonetheless, their claims are supported by the only objective evidence available – the fact that the Sheriff's search revealed no phone in Batteast's possession. The evidence available to the trial court was ambiguous – and the trial court could rationally have concluded that the evidence did not support the charge that Batteast had violated the trial court's instructions.

"Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). In the instant case, the trial judge held a *sua sponte* hearing to determine whether improper contact took place – and if so, whether it was prejudicial to Lattimore. Even had Batteast improperly contacted Morris, there was no evidence to show that they discussed the case or that Batteast had been influenced. The Mississippi Supreme Court considered this issue on appeal and held that the trial court took "the proper course of action," noting, "the trial court obviously decided that Batteast's phone calls, if made, did not alter the verdict." *Lattimore*, 958 So.2d at 204. As such,

- 26 -

the Mississippi Supreme Court held that there was no error in the trial court's handling of this matter. *Id.*at 205. The record supports this finding; as such, the state court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, the decision was not based on an unreasonable determination of the facts in light of the evidence. Thus, Lattimore is not entitled to *habeas corpus* relief regarding his allegations involving juror Batteast.

## Claims Regarding Juror Dickson

Though Lattimore was clear in referring to juror Batteast in Ground Five, in Grounds Thirteen and Fourteen, Lattimore does not specify what alleged juror misconduct he is challenging. In his state court motion for post-conviction collateral relief, Lattimore raised an allegation that a juror named Dickson had committed misconduct.[4] As such, it is unclear whether Lattimore is attempting to raise this challenge to Dickson in Grounds Thirteen and Fourteen – or simply reasserting his challenge to the circumstances surrounding juror Batteast. The court will interpret this claim liberally and address Lattimore's challenge to Dickson. Lattimore claims that juror Dickson did not answer truthfully when asked whether he knew Lattimore or members of his immediate family. Dickson responded "I used to work with him when he was employed at Pine Trailer, and he was a very good – he was a close friend of mine." S.C.R., 2002-KA-01853, Vol. 5, pg. 299. However, Dickson stated that he could be fair to both the defense and prosecution in the trying of the case. S.C.R., 2002-KA-01853, Vol. 5, pg. 299. Lattimore argues that, at the time of trial, Dickson was living with a relative of Lattimore's accomplice. Lattimore argues that his accomplice's family was convinced that Lattimore had been the

_____

[4] Lattimore's state post-conviction application is not an easy read. He clearly challenged appellate counsel's decision not to raise a claim that trial counsel should have investigated and challenged juror Dickson. In addition, read liberally, Lattimore's application also includes a separate challenge regarding trial counsel's handling of juror Dickson.

one who actually murdered the victim. For this reason, Lattimore believes that Dickson was biased against him and should have revealed this information to the trial court.

First, as discussed above, it is irrelevant whether Lattimore actually killed the Mr. Dycus. As Lattimore was a willing participant in the crime, he was liable as a principal even if he merely assisted with the robbery and murder. Moreover, Dickson admitted he knew Lattimore and was fond of him, but stated that he could be fair. Nothing in the record shows Dickson was unable to decide the case fairly. The Mississippi Supreme Court considered this issue on appeal of the denial of Lattimore's state court post-conviction motion and addressed the claim in terms of ineffective assistance of counsel. The court found, however, that Lattimore had not shown that Dickson's presence on the jury prejudiced his case.[5] *Lattimore*, 37 So.3d at 683. As there was no evidence that Dickson was unable to make a fair and impartial decision, Lattimore has not shown that he was prejudiced by Dickson's presence on the jury. As such, the Mississippi Supreme Court's holding was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. Lattimore's claims regarding juror Dickson will be denied.

## Grounds Six and Seven: Prosecutorial Misconduct

Lattimore next argues that the prosecution committed misconduct during closing arguments and that the trial court should have granted his motion for a mistrial based on that behavior. During

---

[5] Though the Mississippi Supreme Court stated that the record was unclear whether Dickson had actually served on Lattimore's jury, *Lattimore*, 37 So.3d at 683, after the jury was empaneled, a list of the jurors was read into the record – and Dickson was on that list. S.C.R., 2002-KA-01853, Vol. 7, pg. 582. Nonetheless, the Mississippi Supreme Court's ruling was based on the fact that there was no evidence of prejudice from Dickson's presence on the jury.

closing arguments, the prosecutor made the following statement, "Now, you remember Mrs. Dycus testified that the man with no shirt on, his hair was shorter. It was fixed, fixed shorter, put up somehow or another." S.C.R., 2002-KA-01853, Vol. 9, pg. 1011. Defense counsel objected to this comment and a bench conference was held. S.C.R., 2002-KA-01853, Vol. 9, pg. 1011. During the bench conference, Lattimore's counsel moved for a mistrial. S.C.R., 2002-KA-01853, Vol. 9, pg. 1012. The trial court denied the motion for mistrial. S.C.R., 2002-KA-01853, Vol. 9, pg. 1012. The trial judge did not recall a statement by Mrs. Dycus that Lattimore's hair had been put up, although she did recall that Mrs. Dycus had stated that his hair had been shorter. S.C.R., 2002-KA-01853, Vol. 9, pg. 1012. As such, the trial judge instructed the jury to disregard the last statement that Lattimore's hair had been put up. S.C.R., 2002-KA-01853, Vol. 9, pg. 1012.

On direct examination, Mrs. Dycus indicated that, at the lineup, Lattimore "had his hair long" so she had to take her time to make certain he was the attacker. S.C.R., 2002-KA-01853, Vol. 7, pg. 652. Mrs. Dycus stated on cross-examination that, on the day of the murder, Lattimore's hair was shorter and "wasn't down to his shoulders like it was in the line-up." S.C.R., 2002-KA-01853, Vol. 7, pg. 661. She later said that she had told law enforcement the attacker "didn't have on a shirt, and he was tall, and at that time, *he had his hair fixed short*, and he was – he wasn't real, real dark complexion." (Emphasis added) S.C.R., 2002-KA-01853, Vol. 7, pg. 667.

In the Fifth Circuit:

[a] court's review of an assertion of prosecutorial misconduct takes place in two steps. First, [the court] must initially decide whether or not the prosecutor made an improper remark. *United States v. Munoz,* 150 F.3d 401, 414 (5th Cir.1998). If an improper remark was made, [the court] must then evaluate whether the remark affected the substantial rights of the defendant. *Id.* at 415; *Garza,* 608 F.2d at 663. In assessing whether statements made by a prosecutor were improper, it is necessary to look at them in context. *United States v. Washington,* 44 F.3d 1271, 1278 (5th Cir.1995).

*United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999). Further,

> [t]o determine whether the argument affected the defendant's substantial rights, we
> examine (1) the magnitude of the statement's prejudice, (2) the effect of any
> cautionary instructions given, and (3) the strength of the evidence of the defendant's
> guilt. *Id.* at 302. As we will not set a conviction aside if the prosecutor's conduct did
> not contribute to the guilty verdict, this analysis is equivalent to review for harmless
> error. *United States v. Cardenas*, 778 F.2d 1127 (5th Cir.1985); *United States v.*
> *Beckett*, 706 F.2d 519 (5th Cir.1983).

*United States v. Simpson*, 901 F.2d 1223, 1227 (5th Cir. 1990). "Criminal convictions are not to be

lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Pineda-*

*Ortuno,* 952 F.2d 98, 106 (5th Cir.), *cert. denied,* 504 U.S. 928, 112 S.Ct. 1990, 118 L.Ed.2d 587

(1992). "A criminal defendant bears a substantial burden when attempting to show that prosecutorial

improprieties constitute reversible error. *United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th

Cir.1990)." *United States v. Bermea*, 30 F.3d 1539, 1563.

The Mississippi Supreme Court considered Lattimore's challenge to the prosecutor's comment

on direct appeal and noted that Mrs. Dycus had indeed testified that Lattimore "had his hair fixed

short." *Lattimore*, 958 So.2d at 205. As such, the Mississippi Supreme Court held that "[b]ecause the

testimony was indeed in evidence, elicited by the defense itself, there is no merit to Lattimore's

argument." *Id.* As the prosecutor's statements were fully supported by the testimony, his comments

reflecting that testimony were proper. Therefore, the Mississippi Supreme Court's holding was neither

contrary to, nor did it involve an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States. Further, the decision was not based on an

unreasonable determination of facts in light of the evidence. Lattimore is not entitled to *habeas*

*corpus* relief on his allegations contained in Grounds Six and Seven.

- 30 -

## Ground Eight: Sufficiency of the Evidence

Lattimore next argues that the verdict was against the overwhelming weight of the evidence.

"A federal *habeas* court has no power to grant *habeas* relief because it finds that the state conviction is

against the 'weight' of the evidence . . . ." *Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir. 1985), *cert.*

*denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986). It is the jury's province to weigh the

evidence. Again, the court has interpreted Lattimore's claim in Ground Eight liberally, and views it as

a challenge to the sufficiency of the evidence. A federal court may determine the sufficiency of the

evidence in a *habeas corpus* proceeding. *See Jackson v. Virginia,* 443 U.S. 307 (1979). For a *habeas*

*corpus* petitioner to succeed in a claim of insufficiency of the evidence, he must show that the

evidence, when viewed in the light most favorable to the prosecution, is such that no rational

factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Id.* The

sufficiency of evidence is challenged by a motion for directed verdict or a motion for judgment *non*

*obstante veredicto* ("JNOV")and, if granted, results in dismissal of the case.

The Mississippi Supreme Court considered this issue on direct appeal and held:

> In this case, Lattimore admitted to being at the scene of the crime. The defense
> presented no evidence in its case-in-chief to prove that Brown, not Lattimore, was the
> actual murderer. Although the defense attempted to impeach each of the prosecution's
> witnesses, the jury ultimately found the prosecution's case to be believable. Based
> upon eyewitness testimony and circumstantial evidence, the verdict cannot be said to
> constitute an "unconscionable justice." This issue is without merit.

*Lattimore,* 9587 So. 2d at 205. As recounted earlier in this opinion, the Mississippi Supreme Court's

findings are fully supported by the record. The jurors had ample evidence before them upon which to

base their verdict. This issue is without substantive merit and will be denied.

## Grounds Three, Ten (C), Ten (D), and Eleven: Ineffective Assistance of Counsel

Lattimore raises several allegations of ineffective assistance of counsel. The court must

- 31 -

address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

## Counsel's Brief Representation of Lattimore and His Codefendant

Lattimore argues that trial counsel was ineffective because, at the time of the pre-trial lineup, he labored under a conflict of interest by representing both Lattimore and his accomplice, Brown. The Mississippi Supreme Court considered this issue on direct appeal and found it to be without merit. While the Mississippi Supreme Court found that a potential conflict of interest did exist during the pre-trial lineup, it noted that "no assistance was given which could adversely affect either client." *Lattimore*, 958 So.2d at 200. Further, the court acknowledged that, shortly after the lineup, Brown was appointed a new attorney. *Id.* As such, "Lattimore had competent, unconflicted counsel at all

- 32 -

time from that point forward." *Id.* Therefore, the Mississippi Supreme Court concluded that Lattimore's counsel was not rendered ineffective due to the short period during which a conflict existed.

State trial courts must investigate timely objections to multiple representation; however, the Sixth Amendment does not require state courts, *sua sponte*, to investigate the propriety of multiple representation in every case – only where the court "knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708 (1980). In the present case, Lattimore did not object during the brief time he was represented by the same attorney as his codefendant, and nothing in the record suggests that the presiding judge needed to probe the situation further. As such, the trial court was not required to inquire into the multiple representation. In any event, in order to establish a violation of the Sixth Amendment, a defendant who, as in the present case, raised *no* objection at trial must prove that an actual conflict of interest adversely affected his lawyer's performance. *Id.* at 348. Lattimore has not, however, shown that he suffered any prejudice arising out of this short-lived potential conflict of interest (a single attorney's representation of both him and his codefendant) during a lineup. Lattimore has not identified an act or omission by his attorney that worked adversely to his interests. Indeed, at the time it became apparent that each defendant intended to implicate the other, separate counsel was appointed. As such, the state court's ruling on this issue was not contrary to, or an unreasonable application of clearly established federal law, nor did involve an unreasonable interpretation of the facts in light of the evidence presented. This claim is without merit and will be denied.

- 33 -

## Counsel's Decision Not to Depose Witness Johnny Brimmage

Lattimore also claims that trial counsel failed to adequately investigate his case and interview key witnesses. On direct appeal, Lattimore was more specific, arguing that trial counsel failed to properly depose Johnny Brimmage, a neighbor of the victim. Lattimore contends that, if counsel had more thoroughly questioned Brimmage, he would have elicited testimony showing that Brown, not Lattimore, committed the murder. As set forth above, however, Lattimore's conviction did not rest on whether Lattimore or Brown swung the fatal blow. Under the doctrine of accomplice liability, Lattimore was equally culpable for Dycus' murder. The Mississippi Supreme Court considered this issue on direct appeal and held:

> Although Brimmage was a key witness in this case, trial counsel made a judgment call
> and chose not to elicit any additional information regarding the killer. Counsel did
> cross-examine Brimmage, asking him about the make of the getaway vehicle and also
> attempting to impeach him by showing he was intoxicated at the time of the crime.
> However, the fact that Brimmage was not asked certain questions about the killer's
> identity does not render counsel's services ineffective.

*Lattimore*, 958 So.2d at 201. Lattimore not shown how counsel was deficient with regard to Brimmage. As noted, there was nothing to gain in pursuing a line of questioning designed to show that Lattimore was not the actual murderer. Furthermore, Lattimore has presented no evidence or argument to demonstrate that Brimmage would have provided such testimony. Moreover, Lattimore cannot show that he suffered any prejudice due to trial counsel's handling of Brimmage. Therefore, the Mississippi Supreme Court's decision regarding this issue was reasonable in fact and in law, and this ground for *habeas corpus* relief will be denied.

## Counsel's Decision Not to Seek a New Trial After Allegations of Juror Misconduct

Lattimore next alleges that trial counsel was ineffective in failing to seek a new trial following the allegation of juror misconduct. As set forth above, the evidence introduced at the hearing offered,

at best, marginal proof of misconduct. The Mississippi Supreme Court considered this issue on direct appeal and held:

> Though counsel certainly could have moved for a new trial at the conclusion of this hearing, we have not held that, without more, such an omission amounts to ineffective counsel. Lattimore has made no viable showing that, had counsel made said motion, the trial court would likely have ruled in his favor. Thus, this issue is without merit.

*Lattimore*, 958 So.2d at 201.

First, Lattimore has not shown that trial counsel performed deficiently in deciding not to seek a new trial. To succeed on such a claim, Lattimore "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). The court's "scrutiny of counsel's performance is 'highly deferential' and [the court] must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct of the counsel's perspective at the time.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Moreover, the court may not assume prejudice occurred if it simply disagrees with trial counsels' strategy. *Strickland*, 466 U.S. at 689 (citations omitted). Counsel's services are not evaluated in a vacuum; the court must examine all circumstances in determining whether counsel's performance was reasonable under prevailing professional standards. *Lavernia*, 845 F.2d at 498. Finally, there is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

In this case, counsel could reasonably have concluded that a motion for a new trial would have been denied, given the vague proof of juror misconduct – consisting entirely of hearsay – and from a person (Lattimore's sister) with an interest in the outcome of the trial. This choice of action was a matter of strategy, and Lattimore has not overcome the presumption that counsel exercised reasonable

- 35 -

professional judgment. Under these circumstances, the court will not second-guess defense counsel's

decision. In addition, Lattimore has provided no proof or argument to show that the trial court would

have granted such a motion, if filed. As such, Lattimore has not proven that counsel was deficient or

that he suffered any prejudice as a result of counsel's decision not to seek a new trial. The Mississippi

Supreme Court's decision on this matter was reasonable in both fact and law, and this claim for

*habeas corpus* relief is without merit.

## Counsel's Decision Not to Seek a Mistrial Based
## Upon Mrs. Dycus' In-Court Identification

Lattimore also complains that trial counsel should have objected and moved for a mistrial

following Mrs. Dycus' in-court identification of him. After Mrs. Dycus' identification of Lattimore,

trial counsel requested a bench conference and stated "we would object to her identification at this

point." S.C.R., 2002-KA-01853, Vol. 7, pg. 649. On appeal, the Mississippi Supreme Court

recognized that "[c]ontrary to Lattimore's argument, trial counsel did, in fact, make a timely objection

to the identification." *Lattimore*, 958 So.2d at 201. Thus, trial counsel did, indeed, object to Mrs.

Dycus' in-court identification, and Lattimore's claim that he did not is flatly contradicted in the record.

This claim for relief is wholly without merit and will be denied.

Following Mrs. Dycus' testimony, trial counsel again requested a bench conference. S.C.R.,

2002-KA-01853, Vol. 7, pg. 677. At that point, counsel informed the court that he had been informed

that someone in the audience may have been signaling to Mrs. Dycus during her identification of

Lattimore. S.C.R., 2002-KA-01853, Vol. 7, pg. 677. Counsel could not, however, describe exactly

what signals might have been given – or by whom – and agreed that the trial judge should simply

remind the audience that there was not be any gesturing. S.C.R., 2002-KA-01853, Vol. 7, pg. 678.

The trial court then admonished the audience, "that there be no gesturing of any type, anything that is

distracting or suggestive, anything that would interfere with the testimony of a witness or with the

jury's concentration on the evidence that's being presented." S.C.R., 2002-KA-01853, Vol. 7, pg. 681.

The court added, "especially no gesturing to witnesses." S.C.R., 2002-KA-01853, Vol. 7, pg. 681. On

appeal, the Mississippi Supreme Court held:

> Although arguably counsel should have moved for a mistrial at this point, Lattimore
> presented no evidence showing that the trial court would likely have granted such
> motion.[6] Whether the event occurred is not clear, but what is clear is that the only
> specific accusation comes from Lattimore himself. There is no showing that the court
> would have given Lattimore a new trial based upon his own self-serving testimony. In
> addition, other mistrial motions were made throughout the trial, proving that counsel
> was active in representing and protecting the rights of his client.

*Lattimore*, 958 So.2d at 201-202. Given the dearth of evidence to support this allegation, the

Mississippi Supreme Court's finding that this claim was without merit was a reasonable application of

*Strickland*, and this ground for *habeas corpus* relief will be denied.

### The Prosecutor's Use of the Alleged Murder Weapon During Closing Arguments

Lattimore argues that trial counsel should have moved for a mistrial when, during closing

arguments, the prosecution referred to the metal bar which had been introduced into evidence as a

possible murder weapon. Specifically, the prosecutor said:

---

[6] The Mississippi Supreme Court included this footnote:

The only testimony specifically concluding that any such suggestion took place came
from Lattimore. His attorney was unsure of whether the incident occurred, stating that
"It is possible that some signals were given to – I'm not sure if it was Mrs. Dycus. I
think it was to Mrs. Dycus either by her family members or someone associated with
the state." At the subsequent hearing to supplement the record, none of the other
witnesses, all of whom were members of Lattimore's family, could say with certainty
that Mrs. Dycus's family had in any way pointed out Lattimore.

*Lattimore*, 958 So.2d at FN 5.

> When you get back there, you men feel this pipe this piece of shaft is what it is – and
> you see the heft of that. And you just think about it don't take but one lick with that to
> put you down. I don't care who you are. You can knock down a mule with this thing.
> And then repeatedly hitting him in the head. No. There's no accident here. No.

S.C.R., 2002-KA-01853, Vol. 10, pg. 1050. After trial, a hearing was held to supplement to the

appellate record. The Mississippi Supreme Court noted that, during that hearing, "several members of

Lattimore's family testified that the prosecutor swung the bar around and banged it on the table,

actions which Lattimore claims were calculated to infuriate the jury." *Lattimore*, 958 So.2d at 202.

However, in the "Order Supplementing Appellate Record," the trial court held:

> During closing argument, then District Attorney Frank Carlton, dropped the metal
> object the State alleged to be the murder weapon onto counsel's table one time. Given
> its heft, the object made a loud sound when it landed on the wooden table. On several
> occasions during closing arguments, the Prosecutor also gestured with the object
> simulating how the instrument was allegedly used to beat the victim. However, no
> contact was made with counsel's tables during these demonstrations.

S.C.R., 2002-KA-01853, Supp.Vol. 1, pp.2-3. In considering this claim, the appellate court held:

> Although Lattimore's attorney could have made several additional objections and
> motions, overall, trial counsel was vigilant in representing his client. He filed pre-trial
> motions to suppress certain evidence, and made numerous objections and motions
> during the course of the guilt phase. The right to effective counsel does not entitle the
> defendant to have perfect counsel, only competent counsel. *Davis v. State*, 897 So.2d
> 960, 966-67 (Miss. 2004) (citing *Stringer v. State*, 454 So.2d 468, 476 (Miss. 1984)).
>
> We conclude that the public defender's overall performance was within the realm of
> suitable performance; thus Lattimore's claims of ineffective counsel are not borne out
> in the record.

*Lattimore*, 958 So.2d at 202. The court cannot discern how the prosecutor's act of dropping the

alleged murder weapon on the table a single time – coupled with demonstrations of how the weapon

might have been used – would warrant a mistrial. The metal bar had heft, and the demonstrations

simply made that clear to the jury, each of whom was also free to handle the metal bar during

deliberations to get a personal feel for the bar as a weapon. Attorneys are not required by the Sixth

Amendment to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5ᵗʰ Cir.1995); *Koch v. Puckett,* 907 F.2d 524, 527 (5ᵗʰ Cir.1990). For these reasons, the Mississippi Supreme Court's finding that this claim was without merit was a proper application of the *Strickland* standard for ineffective assistance of counsel.

### Ground Eleven: Bare Allegations

Finally, in Ground Eleven, Lattimore alleges that he was "subjected to ineffective assistance of counsel during pre-trial, trial, and post-trial proceedings." ECF doc. 1, pg. 12. Lattimore has not, however, provided any argument in support of this allegation. As such, the court cannot determine which of trial or appellate counsel's actions Lattimore seeks to challenge. "[M]ere conclusory allegations do not raise a constitutional issue in a *habeas* proceeding. *Schlang v. Heard,* 691 F.2d 796, 798 (5ᵗʰ Cir.1982) (collecting cases)." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5ᵗʰ Cir. 1983).

For the reasons set forth above, Lattimore's allegations of ineffective assistance of counsel are without merit. In addition, the Mississippi Supreme Court's holding that Lattimore's allegations failed to establish constitutionally ineffective counsel under *Strickland* was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. Thus, Lattimore is not entitled to *habeas corpus* relief regarding his allegations in Grounds Three, Ten (C) and (D), and Eleven.

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this the ____//____ day of August, 2014.

_____
SENIOR JUDGE

- 39 -